UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:   Gurley Housing Associates, L.P., | Case No. 20-10712 |
| | Chapter 7 (Involuntary) |
| Alleged Debtor. | |

APPEARANCES:

| | |
|---|---|
| Kelley Drye & Warren LLP | Joseph Boyle, Esq. |
| *Attorneys for Alleged Debtor* | |
| One Jefferson Road, 2nd Floor | |
| Parsippany, NJ 07054 | |
| | |
| Lemery Greisler LLC | Meghan M. Breen, Esq. |
| *Attorneys for Petitioning Creditor,* | Paul A. Levine, Esq. |
| *EKB Acquisitions, Limited Partnership* | |
| 50 Beaver Street | |
| Albany, NY 12206 | |

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

The current matters before the Court are Gurley Housing Associates, L.P.'s ("GHA" or

the "Alleged Debtor") applications (the "Applications"), pursuant to 11 U.S.C. § 303(i)[1],  for

attorneys' fees and costs (the "Fees").[2]  The Court has jurisdiction pursuant to 28 U.S.C. §§

---

[1] Section 303(i) states in relevant part:

> If the court dismisses a petition under this section other than on consent of all
> petitioners and the debtor, and if the debtor does not waive the right to judgment
> under this subsection, the court may grant judgment (1) against the petitioners
> and in favor of the debtor for (A) costs; or (B) a reasonable attorney's fee . . . .

11 U.S.C. § 303(i).

[2] Although the statute is phrased in the disjunctive (costs . . . or a reasonable attorney's fee), courts have found that
"[t]he legislative history under this section makes clear that the use of the term "or" is not exclusive in this
paragraph." *In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr. N.D. Ill. 1989).  "The court may grant any and all of
the damages provided for under this provision." *Id.*  In effect, damages may be cumulatively assessed. *See In re
Ramsden*, 17 B.R. 59, 61 (Bankr. N.D. Ga. 1981).

157(a), (b)(1), (b)(2)(A) and 1334(b).  For the reasons that follow, the Applications are granted in part.

## FACTS

1. On May 7, 2020, EKB Acquisitions, Limited Partnership ("EKB" or the "Petitioner") filed an involuntary chapter 7 petition (the "Involuntary Petition") against GHA.  (ECF No. 1).

2. On the same day, EKB filed an emergency motion to appoint an interim chapter 7 trustee (the "Motion to Appoint") requesting shortened notice.  (ECF No. 4).

3. Kelley Drye & Warren LLP (the "Firm"), with an office in Parsippany, New Jersey, represents GHA in this matter.

4. The Court signed an order setting the hearing on the Motion to Appoint for May 13, 2020.  (ECF No. 8).

5. On May 12, 2020, the Firm filed a memorandum of law in opposition to the motion to appoint (the "Opposition to the Motion to Appoint").  (ECF No. 11).

6. At the May 13, 2020 hearing, the Court denied the Motion to Appoint.  (ECF No. 13).

7. On May 29, 2020, the Firm filed a motion to dismiss (the "Motion to Dismiss") the Involuntary Petition.  (ECF No. 16).

8. On June 24, 2020, EKB filed a response (the "Response") to the Motion to Dismiss.  (ECF No. 21).

9. On July 1, 2020, the Firm filed a reply to EKB's Response.  (ECF No. 23).

10. On July 8, 2020, the Court heard arguments on the Motion to Dismiss and the matter was held in reserve pending a decision.  (ECF No. 24).

11. On August 3, 2020, the Court issued an oral decision dismissing the Involuntary Petition and awarding Fees to GHA pursuant to Section 303(i).  (ECF No. 27).

12. The Court's order dismissing the Involuntary Petition required that the Firm submit the Fees in billable form within fourteen days.  (ECF No. 25).

13. EKB was granted fourteen days from the date of the submission of the Firm's bills to file any objections to specific billing entries.  *Id.*

14. On August 17, 2020, the Firm filed its application to approve the Fees[3] (the "First Fee Application") in the amount of $117,047.90.  (ECF No. 29).

15. The Firm failed to submit the Fees in billable form by the required date.  *Id.*

16. On August 31, 2020, EKB filed opposition to the First Fee Application.  (ECF No. 32).

17. The Firm filed the Fees in billable form for its First Fee Application on September 1, 2020. (ECF No. 37).

18. On September 9, 2020, the Court held a hearing on EKB's opposition to the First Fee Application.  (ECF No. 38).

19. On September 14, 2020, the Firm filed an additional fee application (the "Additional Fee Application") in the amount of $8,848.50 to prepare the First Fee Application.  (Ex. B., ECF No. 39).

20. On October 2, 2020, EKB filed a supplemental objection (the "Supplemental Objection") to the Firm's requested Fees.  (ECF No. 40).

21. The Firm filed a reply (the "Reply") to the Supplemental Objection on October 9, 2020. (ECF No. 42).

---

[3] The First Fee Application requests $169.40 for transcription costs.  EKB has not opposed it and the Court allows it.

## ARGUMENTS

EKB first argues that the Fees should be disallowed or reduced because the First Fee

Application was not submitted in billable form.  *See* ECF No. 32.  Additionally, the Petitioner

argues that the Firm's Fees should be reduced because the Firm's billing statements identify

Michael J. Uccellini ("Uccellini") as the client, not GHA.  Moreover, EKB contends that the

Firm's First Fee Application should be adjusted because the Firm's hourly rates do not reflect

those typically awarded in the Northern District of New York.  EKB cites *Farbotko v. Clinton

Cnty. of N.Y.*, 433 F.3d 204 (2d Cir. 2005) as support for its contention and urges this Court to

reduce the hourly rate to comport with the generally accepted fee structure in this district.

Further, the Petitioner asserts:

> a. the Firm overstaffed the matter;
> b. the Firm should have used two attorneys already familiar with the case as opposed to
> using a junior attorney who needed time to get acquainted with the case and only
> performed one limited task on one day;
> c. the Firm overutilized a senior attorney; and
> d. the Firm billed for unnecessary and vague work.

EKB insists these billed hours are not reasonable and should be reduced.  The Petitioner also

contends that the Additional Fee Application is not reasonable because the Firm's requested

amount is 7.5% of the First Fee Application.

The Firm argues that the Fees should be awarded in full for the First Fee Application and

Additional Fee Application.  According to the Firm, "attorneys' fees in this particular matter are

designed to essentially put the Alleged Debtor in the position they would be had the petition

never been filed."  *See* Sept. 9, 2020 Hr'g at 01:10-01:18, ECF No. 38.  Attorney Boyle of the

Firm also contends that the Court's obligation is to determine what amounts have been billed to

the client.  *See id.* at 05:55-05:58.  He further posits that this should not be an exercise to look at

each invoice and determine its appropriateness.  *See id.* at 06:12-06:19.  He argues that it is really

a bottom-line number. *See id.* at 06:34-06:37. Simply put, the Firm states the hourly rates and

number of hours are appropriate and reasonable to defend against the Involuntary Petition. *See*

Firm's Reply, ECF No. 42.

## DISCUSSION

Initially, the Court disagrees with the Firm's assertion that the Court's role is ministerial

at best when reviewing the Applications. To adopt the Firm's analysis would effectively write

the word "reasonable" completely out of Section 303(i). Therefore, as directed by the statute and

case law, the Court will review the Applications for reasonableness. *In re Anmuth Holdings,*

*LLC*, 600 B.R. 168, 190 (Bankr. E.D.N.Y. 2019) ("[T]he request [for fees] must be reviewed for

reasonableness pursuant to § 303(i)(1).").

### *I. Identity of the Client on Billing Statements*

The Petitioner alleges that the Firm's billing statements do not correctly identify GHA as

the Firm's client. *See* EKB's Supplemental Objection, ECF No. 40. According to EKB, the

Fees should be reduced because the Firm's billing statements list Uccellini as the Firm's client.

*See id.*

Uccellini has stated under penalty of perjury that he is the manager of ARPI, the general

partner of GHA.[4] *See* Uccellini Affidavit, ECF No. 11. The time records clearly show that the

legal work performed flowed from the Involuntary Petition. EKB does not offer any billing

statements that relate to Uccellini as an individual and the Court finds none. The Firm's billing

statements correspond to the efforts to defend against the Involuntary Petition. Therefore, the

Court declines to reduce the Fees on this basis.

---

[4] *See* Ex. A, Section 5.1, ECF No. 11 ("The Partnership shall be managed by the General Partner, who shall exercise full and exclusive control over the affairs of the Partnership, subject, however, to the limitations on its authority set forth in this Partnership Agreement (including, without limitation, §§ 5.2 and 5.3.)."); *see also* N.Y. Partnership Law § 20(1); N.Y. Revised Limited Partnership Act § 121-403.

## II. The Reasonableness of the Firm's Hourly Rates

"Fee awards are governed by the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008)." *Doe v. Cornell Univ.*, 3:17-CV-0402, 2019 U.S. Dist. LEXIS 62986, at *16 (N.D.N.Y. Apr. 11, 2019) (Suddaby, C.J.). "Pursuant to *Arbor Hill*, a court must first consider whether the rates at which compensation is sought are those that a reasonable, paying client would be willing to pay before multiplying that figure by the number of hours expended." *Id.* (citing to *Arbor Hill*, 522 F.3d at 190-91) (internal quotation marks omitted). The Court recognizes that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

Generally, a court considers "the prevailing rates in the district in which the court sits." *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). However, "the rate prevailing in the appropriate community is only one of many factors bearing on determination of a fee award." *Id.* In certain situations, the practice of bankruptcy law is an appropriate exception to not bind the prevailing rate to the court's district. *See Arbor Hill*, 522 F.3d at 192 ("Sometimes, legal markets may be defined by practice area."); *see also In re Robertson Cos.*, 123 B.R. 616, 619 (Bankr. D. N.D. 1990) (determining that a restriction on a Minneapolis law firm to North Dakota hourly rates unduly parochial); *In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 342 (Bankr. W.D. Tex. 1989) ("Many bankruptcy cases are often more regional or even national than they are local in scope, so that looking solely to the local community's range of rates would impose an unnecessarily parochial cap on the case.") (citation omitted); *In re Baldwin United Corp.*, 36 B.R. 401, 402 (Bankr. S.D. Ohio 1984) ("To limit fees to the rates charged by

Cincinnati bankruptcy lawyers, merely because these cases happened to be filed in Cincinnati, would be a position too capricious and parochial . . . .").

Further, "a district court may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191. An out-of-district hourly rate is appropriate "if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable . . . ." *Id.*

Based on the above analysis, the Court declines to artificially cap the attorneys' hourly rates in this case because GHA had to respond and guard against the ill-advised Involuntary Petition. *In re TPG Troy, LLC*, Case No. 12-14965, Case No. 12-14966, 2013 WESTLAW 3789344, at *4 (Bankr. S.D.N.Y. July 18, 2013) ("The [alleged debtor's] counsel had no choice but to defend or respond to the various actions taken by Petitioning Creditors throughout this dispute.").

At the outset, GHA had an extremely tight time frame to respond to the Motion to Appoint. EKB commenced the highly strategic Involuntary Petition on Thursday, May 7, 2020. On the same day, EKB filed a two hundred and fifty-two (252) page pleading requesting an emergency hearing to appoint an interim chapter 7 trustee. On Friday, May 8, 2020, the Court entered an order shortening time that set the hearing on the appointment of an interim trustee for Wednesday, May 13, 2020 with opposition due on Tuesday, May 12, 2020. *See* ECF No. 8. EKB's aggressive actions only gave GHA four days, including a weekend, to defend against the Involuntary Petition.

The Court also considers the lengthy attorney-client relationship between the Firm and GHA as support of the reasonableness of the attorneys' hourly rates. *See* Sept. 9, 2020 Hr'g at 01:31-01:36, ECF No. 38. Given the short turnaround time to respond to the Involuntary Petition and the long-lasting attorney-client relationship, GHA logically entrusted its defense to legal counsel that fully understood the preceding facts and circumstances that led to the involuntary proceeding; to expect GHA to select new, local counsel within four days is unreasonable and unrealistic.

Based upon specific facts and circumstances of this case and for the reasons as articulated, the Court finds the hourly rates requested by the Firm reasonable. While these requested hourly rates skew on the high end, this Court has awarded an hourly rate to senior counsel on par with the Firm's request.[5]

Ultimately, the Court is convinced that the Alleged Debtor was more concerned with the end result than the Firm's hourly rates. GHA's lifeblood was at stake and the outcome speaks for itself.

### III. The Reasonableness of the Number of Hours Requested

### A. Specific Issues with the First Fee Application

"Time that is excessive, redundant or otherwise unnecessary should be excluded." *Nicholas v. Oren (In re Nicholas)*, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011) (internal citations omitted and internal quotation marks omitted). After review of the First Fee Application and for the following reasons, the Court reduces the First Fee Application as noted below.

---

[5] In a current chapter 11 proceeding, the Court approved an hourly rate of $820.25 to a senior attorney who had discounted the hourly rate from $965.00 to $820.25 due to the "charitable nature of the Companies." *See In re Good Samaritan Lutheran Health Care Ctr., Inc. and Kenwood Manor, Inc.*, Case No. 19-12215, Bankr. N.D.N.Y., filed on Dec. 12, 2019, ECF No. 125 Ex. B, Reperowitz Affirmation and Ex. D, Engagement Letter and ECF No. 301.

### 1. Vague Billing Entries

The Court strikes a billable entry for Attorney Polloway titled "Assess potential future strategy in case" for 5.40 hours on May 14, 2020.  *See* ECF No. 37.  The Court declines to give the Firm carte blanche for unnecessary and vague billing.  *See Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 254 (B.A.P. 9th Cir. 2007) ("It was not error for the bankruptcy court to evaluate [the alleged debtor's] fee request based upon the law it actually applied, and not based on all the possible theories and issues potentially implicated by the parties' arguments.").

"Also, within a district court's discretion is the ability to exclude attorney's fees amounts which are attributable to time spent on unsuccessful claims that are not inextricably intertwined with the successful claims."  *O'Grady v. Mohawk Finishing Prods., Inc.*, 96-CV-1945, 1999 U.S. Dist. LEXIS 6076, at *14-15 (N.D.N.Y. Jan. 15, 1999).  In the present matter, the Court cannot analyze how a potential theory related to a possible future strategy is inextricably intertwined to defend against the Involuntary Petition.  Thus, Attorney Polloway's requested 5.40 hours to assess a potential future legal strategy are disallowed.

In addition, the Court strikes Attorney Boyle's request for .10 hours to review an email and bankruptcy article on May 19, 2020.  There is no reference to the article's subject matter and how it relates to the current issue.

### 2. Duplicative and Excessive Billing Entries

The Firm requests Fees for work that the Court considers excessive and unreasonable because the Opposition to the Motion to Appoint and the Motion to Dismiss share stark similarities.[6]  The Court declines to grant Fees for work that is essentially a carbon copy of the

---

[6] It does not escape the Court's attention that at the hearing on the Motion to Appoint, Attorney Boyle asked the Court "to consider our opposition as a motion to dismiss . . . ."  *See* May 13, 2020 Hr'g Tr. 19:1-2, ECF No. 19.

Opposition to the Motion to Appoint.  *See In re First State Bancorporation*, No. 7-11-11916 JA,

2014 Bankr. LEXIS 1138, at *15 (Bankr. D.N.M. Mar. 24, 2014) ("An attorney requesting

compensation must exercise billing judgment to ensure that the compensation requested is actual

and necessary.").  Minimal edits and revisions were made.  *Id.* at *16 ("Not all work performed

by an attorney whose employment has been approved is compensable simply by virtue of the fact

that the attorney has actually performed the work.").

     Here, the Opposition to the Motion to Appoint and the Motion to Dismiss have eerily

similar footprints.  These pleadings share multiple line-by-line sentences and full-length

paragraphs.  Furthermore, the Firm relied on two senior attorneys, who billed at a higher rate

than the junior attorneys, to make these cosmetic alterations.  In short, the Firm requests Fees for

nearly identical work.  Specific billing entries are detailed below.

     *Attorney Rao's request for 4.40 hours to draft various legal sections in the Motion to Dismiss on May 28, 2020*

     The Court removes this entry because it is duplicative.  On the same day, Attorney

Polloway spent 8.30 hours to draft various legal sections for the Motion to Dismiss.

     *Attorney Polloway's request for 6.90 hours to review and revise the Motion to Dismiss, draft notice of the Motion to Dismiss, draft a proposed order, and attend to issues related to filing of same on May 29, 2020*

     These hours are excessive and disallowed.  As stated above, the Motion to Dismiss did

not significantly deviate from the Opposition to the Motion to Appoint.

*Attorney Polloway's request for 6.20 hours to review EKB's Response; research cases cited in same; and draft various legal sections in reply to EKB's Response on June 29, 2020*

On June 25, 2020, Attorney Rao billed 2.10 hours to review the opposition brief. This request is granted. On June 26, 2020, Attorney Rao requested 6.70 hours to review the Petitioner's opposition brief and supporting case law; conference calls with team regarding same. Those hours are granted. However, on June 29, 2020, Attorney Polloway requested 6.20 hours to do virtually the same work that Attorney Rao performed on June 25 and June 26. Thus, the Court cuts Attorney Polloway's requested 6.20 hours on June 29, 2020 as redundant.

*Attorney Rao's request for 5.10 hours on July 1, 2020 to finalize the Motion to Dismiss*

According to the time records, Attorney Rao performed this work on July 1, 2020. However, the Motion to Dismiss was filed on May 29, 2020 and the docket does not show any amended or additional pleadings. Thus, it is unclear what part of the Motion to Dismiss was finalized on July 1, 2020 when the pleading was filed in May; this request is disallowed.

*Attorney Rao's request for 2.20 hours to review and revise the oral argument outline on July 9, 2020*

In addition, the Court strikes Attorney Rao's request for 2.20 hours on July 9, 2020 to review and revise the oral argument outline. Since the Court allows his requests for 2.10 hours on July 6, 2020 to begin preparing for the oral argument and 5.10 hours on July 10, 2020 to prepare for and attend the oral argument on the Motion to Dismiss, Attorney Rao's additional request for 2.20 hours is excessive.

*Attorney Rao's request for 2.10 hours on August 3, 2020 to prepare for and attend hearing*

The Court disallows Attorney Rao's requested 2.10 hours to prepare for and attend the August 3, 2020 hearing because Attorney Boyle also billed .60 hours to attend the same August 3, 2020 hearing.  *See In re Forever Green Athletic Fields, Inc.*, No. BR 12-13888-MDC, 2017 Bankr. LEXIS 1240, at *31 (Bankr. E.D. Pa. May 3, 2017) ("Generally, courts do not permit the recovery from an adversary fees incurred by multiple attorneys attending the same proceeding."); *In re Chanel Master Holdings, Inc.*, 309 B.R. 855, 863 (Bankr. D. Del. 2004) (striking attorneys' fees when more than one attorney billed hours to attend the same hearing).  Further, the Court is troubled by Attorney Rao's description of services provided i.e. prepare for and attend hearing.[7] On August 3, an oral decision dismissing the Involuntary Petition was read into the record; it lasted 20 minutes and 25 seconds according to the docket.  *See* Aug. 3, 2020 Hr'g, ECF No. 27. The Court cannot fathom what preparation was necessary for Attorney Rao to listen to the August 3, 2020 oral decision.

Upon the Court's review, these billed entries totaling 32.40 hours are unreasonable and disallowed.  The First Fee Application is reduced from $117,047.90 to $97,251.40.  The Court's reductions to the attorneys' requested billable hours are summarized below.

---

[7] On July 24, 2020, the Courtroom Deputy emailed Attorney Boyle and Attorney Rao of the Firm and Attorney Levine for the Petitioner.  The email provides in relevant part, "The Court is going to issue an Oral Decision regarding the Motion to Dismiss (doc #16), that is on reserve in the above referenced case."

| Billing Date | Attorney | Attorney's Requested Billable Hours | Hours Cut by the Court | Amount Deducted from First Fee Application |
|---|---|---:|---:|---:|
| May 14, 2020 | Attorney Polloway | 5.40 | 5.40 | $3,051.00 |
| May 19, 2020 | Attorney Boyle | 0.10 | 0.10 | $98.00 |
| May 28, 2020 | Attorney Rao | 4.40 | 4.40 | $2,948.00 |
| May 29, 2020 | Attorney Polloway | 6.90 | 6.90 | $3,898.50 |
| June 29, 2020 | Attorney Polloway | 6.20 | 6.20 | $3,503.00 |
| July 1, 2020 | Attorney Rao | 5.10 | 5.10 | $3,417.00 |
| July 9, 2020 | Attorney Rao | 2.20 | 2.20 | $1,474.00 |
| August 3, 2020 | Attorney Rao | 2.10 | 2.10 | $1,407.00 |

### 3. Lumped Billing Entries Throughout the First Fee Application

In addition to specific cuts, the Court applies a further 5% reduction to the First Fee Application because the First Fee Application has a multitude of lumped billing entries.  "To address problems like block billing . . . , courts routinely apply across the board reductions." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff)*, Adv. Pr. No. 08-01789, 2020 Bankr. LEXIS 724, at *46 (Bankr. S.D.N.Y. Mar. 20, 2020) (citations omitted).  "Courts have routinely disallowed fees when multiple tasks are aggregated into one billing entry, typically referred to as "block billing" or "lumping," as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed."  *In re GSC Grp., Inc.*, 502 B.R. 673, 742 (Bankr. S.D.N.Y. 2013) (citation omitted).

For example, Attorney Wong billed 3.10 hours on May 28, 2020 to confer with Attorney Polloway "regarding matter's procedural history; review prior filings and draft of motion to dismiss; research proper branch upon which to dismiss involuntary petition; locate authority of same in support of motion to dismiss."  *See* ECF No. 37.  The Court has no meaningful way to distinguish how many hours Attorney Wong spent to familiarize himself with the case as opposed to how many hours Attorney Wong dedicated to legal research.

Thus, as a result of lumped billing entries in the First Fee Application, the Court cuts the

First Fee Application by 5% from $97,251.40 to $92,388.83.

### *4. The Firm's Failure to Abide by the Court's Order in a Timely Manner*

At the September 9, 2020 hearing, the Court stated that the lateness of the complete First

Fee Application is an issue that would be addressed.  *See* Sept. 9, 2020 Hr'g at 07:15-07:20, ECF

No. 38.  The Court understands that "an opportunity must be afforded to a good faith applicant

who attempts to comply with the applicable rules governing the format and content of fee

applications to amend the fee application to remedy deficiencies . . . ."  *In re Fleming Cos.*, 304

B.R. 85, 90 (Bankr. D. Del. 2003) (citing to *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 846

(3d Cir. 1994)).  The Firm corrected its omission and uploaded its Fees in billable form on

September 1, 2020.  Since no party has been prejudiced by this administrative mistake, the Court

accepts the Firm's explanation and declines to cut the Fees based on this clerical error.

### *B. The Court's Review of the Additional Fee Application*

The Court allows the Firm's Additional Fee Application as adjusted below.  "Because

[Section 303(i)] is a fee-shifting provision, however, it is subject to the general rule that in

statutory fee cases, . . . time spent in establishing the entitlement to and amount of the fee is

compensable."  *Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Devs., Inc. (In re S. Cal. Sunbelt

Devs., Inc.)*, 608 F.3d 456, 464 (9th Cir. 2010) (citation omitted and internal quotations omitted).

However, the Additional Fee Application exceeds a reasonable amount.  *See In re Mesa

Air Grp., Inc.*, 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (finding that "the 3-5% range [of the

total fees] is a useful metric").  Here, the Firm requests $8,848.50 for its Additional Fee

Application.  This request is unreasonable because the Firm seeks 7.5% of the First Fee

Application.  Having reduced the Firm's requested Fees for the First Fee Application from

$117,047.90 to $92,388.83, the Court allows 5% of $92,388.83 to prepare the fee application.

Thus, the Firm is entitled to $4,619.44 for its Additional Fee Application.

### III. Summary of the Firm's Fees

The Court's findings are summarized below.

### The Firm's Hourly Rates

| Attorney | Hourly Rate |
|----------|-------------|
| Attorney Boyle | $980.00 |
| Attorney Kane | $730.00 |
| Attorney Rao | $670.00 |
| Attorney Polloway | $565.00 |
| Attorney Tewiah | $475.00 |
| Attorney Wong | $475.00 |

### The Firm's First Fee Application

| First Fee Application Request | First Fee Application Awarded |
|-------------------------------|------------------------------|
| $117,047.90 | $92,388.83 |

### The Firm's Additional Fee Application

| Additional Fee Application Request | Additional Fee Application Awarded |
|------------------------------------|------------------------------------|
| $8,848.50 | $4,619.44 |

## CONCLUSION

For all the foregoing reasons, the Court grants the Applications in the total amount of

$97,008.27.  The Court will prepare a judgment consistent with this decision.

It is SO ORDERED.

Dated: January 12, 2021                    /s/ Robert E. Littlefield, Jr.
      Albany, New York                    Robert E. Littlefield, Jr.
                                       United States Bankruptcy Judge